2011 UT App 425

**WOLF MOUNTAIN RESORTS, LC, Plaintiff and Appellant,**

v.

**ASC UTAH, INC., et al., Defendant and Appellee.**

No. 20100342–CA.

Court of Appeals of Utah.

Dec. 15, 2011.

David M. Wahlquist, Rod N. Andreason, Ryan B. Frazier, and Michael D. Zimmerman, Salt Lake City, for Appellant.

John P. Ashton, Clark K. Taylor, Mary Jane E. Galvin–Wagg, John R. Lund, and Kara L. Pettit, Salt Lake City, for Appellee.

Before Judges THORNE, VOROS, and ROTH.

## OPINION

THORNE, Judge:

¶ 1 Wolf Mountain Resorts, LC (Wolf Mountain) appeals from the district court's entry of summary judgment in favor of ASC Utah, Inc. (ASCU). In its summary judgment order, the district court reformed the language of a mortgage's due on sale clause, accepting ASCU's argument that, in drafting the clause, the parties had twice inadvertently written the word "Mortgagee" instead of the intended word, "Mortgagor." We conclude that evidence submitted by Wolf Mountain in opposition to summary judgment created a question of material fact as to the parties' intent in drafting the due on sale clause, and we reverse the grant of summary judgment and remand this matter to the district court for further proceedings.

## BACKGROUND

¶ 2 In November 2005, ASCU entered into a leasehold mortgage (the Mortgage) with Wolf Mountain. The Mortgage denominated ASCU as the "Mortgagor" and Wolf Mountain as the "Mortgagee," and employed those terms throughout its text in referring to the parties. The purpose of the Mortgage was to secure certain obligations that ASCU, as tenant, owed to Wolf Mountain under a previously executed ground lease (the Ground Lease), through which Wolf Mountain had leased real property to ASCU for its operation of The Canyons ski resort. The Mortgage transferred ASCU's tenancy interest

under a separate lease with the Utah School and Institutional Trust Lands Administration (the SITLA Lease) to Wolf Mountain as security for ASCU's obligations under the Ground Lease.

¶ 3 The Mortgage contained various default provisions, including a clause (the Due On Sale Clause) declaring a default in the event of the sale or transfer of either ASCU itself or the mortgaged interest described in the Mortgage (the Mortgaged Estate). The Due On Sale Clause provided that "any sale, transfer, conveyance or assignment of all or any portion of, or any interest in, the Mortgaged Estate, or the sale, transfer, conveyance or assignment of any controlling ownership interest in and to the Mortgagor [ASCU]" would constitute an event of default on the Mortgage. The Due On Sale Clause contained two exceptions, the second of which (the Exception) gives rise to the current dispute. The Exception defined a particular type of transfer that would not constitute a default under the Due On Sale Clause:

> [A]ny transfer of all or substantially all of *Mortgagee's* [ (Wolf Mountain's) ] rights in and to the development currently known as The Canyons (including, without limitation, all of *Mortgagee's* [ (Wolf Mountain's) ] interest as tenant under the Ground Lease and the Mortgaged Estate) whether affected by stock or asset sale, provided that such transfer shall be expressly subject to each and every one of the liens, rights and interests of the Mortgagee [ (Wolf Mountain) ] under this Leasehold Mortgage. For purposes of the foregoing sentence, "substantially all" shall include all of the assets held by Mortgagor [ (ASCU) ] which are necessary for unimpeded operation and development of The Canyons resort as it currently exists or may be improved.

(Emphasis added.) The Mortgage expressly provided that all of the default provisions, including the Due On Sale Clause and the Exception, "shall be strictly construed."

¶ 4 In July 2007, ASCU was sold by capital stock sale to Talisker Canyons Finance Company and Talisker Corporation (collectively, Talisker). The sale bound Talisker to each of the rights, liens, and interests of Wolf

Mountain under the Mortgage. Wolf Mountain sued ASCU to foreclose on the Mortgage, alleging that the sale of ASCU constituted an event of default under the Due On Sale Clause. ASCU responded to Wolf Mountain's complaint with a motion to dismiss asserting that the Talisker sale did not constitute a default pursuant to the Exception because Talisker remained subject to all of Wolf Mountain's rights and interests under the Mortgage. In opposition to ASCU's motion, Wolf Mountain argued that the plain language of the Exception addressed the sale of the Mortgagee's—i.e., Wolf Mountain's— rights in and to The Canyons, not ASCU's rights as the Mortgagor. ASCU responded that the Exception's use of the word Mortgagee was, in the context, clearly a typographical error and that the parties' clear intent was to allow certain sales of ASCU's rights to The Canyons as the Mortgagor. The district court determined that it could not decide the question of the parties' intent on a motion to dismiss and denied ASCU's motion.

¶ 5 The parties then brought competing motions for summary judgment on the issue of whether the Exception applied to sales of Wolf Mountain's rights or ASCU's rights in The Canyons. ASCU made various arguments as to why the language of the Exception as drafted made little sense in the context of the Due On Sale Clause and the Mortgage as a whole. Wolf Mountain argued that the Exception was drafted exactly as the parties had intended it and supported this argument with the affidavit of Bradley Rauch, an attorney who had participated in the drafting of the Mortgage as counsel for Wolf Mountain. Rauch's affidavit described the drafting process and stated,

> There was no typographical or scrivener's error in the final "due on sale" clause incorporated into the final Leasehold Mortgage. The Second Exception to the Due–On–Sale Clause was intended to provide Wolf Mountain—the "Mortgagee"— with the right to enter into a joint transaction with ASCU to sell both of their interests in the resort and its underlying lands to a third party without triggering the Due–On–Sale Clause.

The district court expressly declined to consider extrinsic evidence of the parties' intent, including Rauch's affidavit, and instead agreed with ASCU that the Exception's use of the word Mortgagee to identify qualifying transfers was clear typographical or scrivener's error.

¶ 6 The district court determined that the Exception's use of the word Mortgagee was inconsistent with the general purpose of the Due On Sale Clause to protect Wolf Mountain against an unsecured sale of ASCU's interests and created an absurd result whereby Wolf Mountain was granted the unilateral ability to create a default and then foreclose on the Mortgage. The district court also identified several specific ways in which the language of the Exception appeared to be inconsistent with other provisions of the Mortgage, including: the Exception spoke in terms of Wolf Mountain transferring its interest in the Mortgaged Estate, yet the Mortgaged Estate, consisting of ASCU's tenancy interest under the SITLA Lease, belonged to ASCU; the Exception was triggered by a sale of "substantially all" of Wolf Mountain's interests, but "substantially all" was then expressly defined to mean "all of the assets held by Mortgagor [ASCU]"; and the Exception characterized Wolf Mountain as the tenant under the Ground Lease when the Mortgage expressly identified ASCU as the tenant. In light of these multiple inconsistencies, all of which would be resolved if the Exception were intended to apply to a transfer of ASCU's rights rather than Wolf Mountain's, the district court determined that the intent of the parties was clear and that "the error of placing 'ee' rather than 'or' was the product of confusion or a scrivener's error."

¶ 7 The district court then reformed the Mortgage so that the Exception referred to transfers by ASCU as Mortgagor rather than Wolf Mountain as Mortgagee. Pursuant to the reformed language, the Talisker sale fell within the terms of the Exception and did not constitute a default under the Due On Sale Clause. Accordingly, the district court denied Wolf Mountain's motion for summary judgment and entered summary judgment in ASCU's favor, dismissing Wolf Mountain's foreclosure action. Wolf Mountain appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Wolf Mountain argues that Rauch's affidavit raised a fact question that precluded the entry of summary judgment in ASCU's favor and that the district court should have instead granted Wolf Mountain's own summary judgment motion. "An appellate court reviews a trial court's 'legal conclusions and ultimate grant or denial of summary judgment' for correctness and views 'the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.'" *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations omitted). "'A motion for summary judgment may not be granted if ... there is a factual issue as to what the parties intended.'" *West One Trust Co. v. Morrison*, 861 P.2d 1058, 1062 (Utah Ct.App.1993) (omission in original) (quoting *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991)).

## ANALYSIS

¶ 9 The district court determined on summary judgment that two uses of the word "Mortgagee" in the Exception constituted scrivener's error and that the parties clearly intended to use the word "Mortgagor" instead. Wolf Mountain argues that the reformation of a contract based on scrivener's error may only occur upon proof that the language used in the contract does not reflect the parties' original drafting intent. Intent is a factual question, and Wolf Mountain presented affidavit evidence from one of the original drafters of the Mortgage stating that the Exception's language was exactly as the parties intended. Wolf Mountain argues that this evidence is sufficient to create a fact question on the parties' intent and preclude summary judgment.

¶ 10 "It is well settled that mistakes as to the legal effect of words used in a contract or deed ... are subject to reformation by the courts." *Haslem v. Ottosen*, 689 P.2d 27, 30 (Utah 1984).

"If two parties are in clear agreement as to the factual and legal result that they

wish to accomplish, and a deed or other document is drawn by a scrivener using words that do not produce that result, the case is a proper one for reformation of the instrument. The scrivener has made a mistake, either as to the result that he was instructed to produce, or as to the legal effect of the words that he used.... With respect to the legal effect of the words, the two parties no doubt make the same mistake that the scrivener made; and they make it because they relied on him."

*Id.* (quoting 3 A.L. Corbin, *Corbin on Contracts* § 619 (1960)). Because there is a "presumption that an unambiguous written document is accurate and binding," contractual language may only be reformed by a court upon clear and convincing evidence that the language does not comport with the parties' original intent. *See West One Trust Co.*, 861 P.2d at 1061. Determining the parties' intent in drafting a contract presents a question of fact. *Cf. Merrick Young Inc. v. Wal–Mart Real Estate Bus. Trust*, 2011 UT App 164, ¶ 17, 257 P.3d 1031 ("If ... the court determines that the language is ambiguous, the parties' intent is a question of fact....").

¶ 11 Here, ASCU's summary judgment motion asked the district court to determine that the Exception's use of the word Mortgagee instead of Mortgagor was a scrivener's error. In opposition, Wolf Mountain offered extrinsic evidence that the parties had intended to use the word Mortgagee, but the district court refused to consider that evidence. This was error by the district court. ASCU's allegation of scrivener's error constitutes an allegation of mutual mistake by the parties as to the language of the Exception. *See, e.g., Hottinger v. Jensen*, 684 P.2d 1271, 1273 (Utah 1984) ("This case is a clear case of mutual mistake by the parties.... It was only due to a mistake made by the drafter of the deed as to the metes and bounds description that the deed did not conform to the intent of the parties."). And, in an exception to the general rule disallowing parol evidence to interpret contracts, "parol evidence is admissible to demonstrate that a mutual mistake resulted in a document which does not accurately reflect the intent of the parties." *West One Trust Co.*, 861 P.2d at 1061. Because Wolf Mountain offered admissible evidence bearing on the factual question of the parties' intent, the district court erred when it failed to consider that evidence. *See id.* ("[T]he trial court should have considered extrinsic evidence that may have demonstrated that the parties intended the subject properties to be held as partnership assets, rather than as joint tenancies with rights of survivorship.").

¶ 12 Having determined that the district court erred in failing to consider Wolf Mountain's extrinsic evidence, the question becomes whether that evidence creates a material question of fact that would have precluded summary judgment in ASCU's favor. We conclude that it does. Wolf Mountain proffered the affidavit of Bradley Rauch, who was not only Wolf Mountain's counsel at the time that the Mortgage was drafted but purports to have been the actual drafter of the challenged language.[1] Rauch's affidavit flatly asserts that the Exception's language was used intentionally by the parties and "was intended to provide Wolf Mountain—the 'Mortgagee'—with the right to enter into a joint transaction with ASCU to sell both of their interests in the resort and its underlying lands to a third party without triggering the Due–On–Sale Clause." Rauch's affidavit suffices to create a question of material fact as to the parties' actual intent, and summary judgment reforming the Mortgage was therefore inappropriate. *See Best v. Daimler Chrysler Corp.*, 2006 UT App 304, ¶ 10, 141 P.3d 624 ("[I]t only takes one sworn statement under oath to dispute the averments on the other side of the controversy and create an issue of fact." (internal quotation marks omitted)).

¶ 13 Although we conclude that the district court erred in granting summary judgment to ASCU, we cannot say that Wolf Mountain was entitled to summary judgment either.[2] Wolf Mountain argues that ASCU

1. Thus, as Wolf Mountain understandably emphasizes in its briefing, Wolf Mountain opposed a claim of scrivener's error with the affidavit of the scrivener himself.

2. While Wolf Mountain has not expressly con-

waived its reformation argument when it failed to plead mutual mistake, with particularity or otherwise, in its Answer. However, after Wolf Mountain relied on the Exception language in its opposition to ASCU's motion to dismiss, ASCU developed its scrivener's error argument in great detail in its reply memorandum. After the district court denied ASCU's motion, ASCU filed an answer that expressly raised both mistake and scrivener's error as defenses. Under these circumstances, we see no waiver of ASCU's right to present a defense of scrivener's error.

¶ 14 We further note that ASCU has also raised a material question of fact as to the scrivener's error question. As the district court persuasively stated in its summary judgment order, the language and purpose of the Mortgage as a whole strongly suggest that ASCU's proposed reformation accurately reflects the parties' intent.[3] The language as drafted presents multiple apparent inconsistencies, while the proposed reformation appears to be both internally consistent and consistent with the overall purposes of the Mortgage and the Due On Sale Clause. On remand, the district court will need to evaluate the language of the Mortgage as a whole, as well as any extrinsic evidence presented by the parties, and determine as a factual matter whether the parties intended the Exception to apply to ASCU as the Mortgagor or Wolf Mountain as the Mortgagee.

## CONCLUSION

¶ 15 Reformation of an alleged scrivener's error in a contract is permissible but only to conform the language of the contract to the parties' original intent. Here, Wolf Mountain presented affidavit evidence that the challenged language in the Mortgage was deliberately used by the parties to effectuate their intent. Wolf Mountain's affidavit created a material question of fact on the issue of the parties' intent, precluding the reforma-

tion of the Mortgage on ASCU's motion for summary judgment. Accordingly, the district court's entry of summary judgment is reversed and this matter is remanded for further proceedings consistent with this opinion.

¶ 16 WE CONCUR: J. FREDERIC VOROS JR. and STEPHEN L. ROTH, Judges.

ceded this issue, its position at oral argument before this court appeared to be that the matter should be remanded for a factual determination of the parties' intent.

3. We are also not persuaded by Wolf Mountain's argument that reformation of the contract language is precluded by the Mortgage's provision that the Due On Sale Clause and Exception be strictly construed. It seems to us that, if this is a case of scrivener's error, then what is to be strictly construed is the parties' intent as reflected by the words they intended to use, not the words that ended up in the Mortgage by mistake.